## THE ST. JOHNS N. F.

(Circuit Court of Appeals, Second Circuit.    April 13, 1921.)

No. 181.

1. **Shipping ⟨⟩106—Bill of lading held not "negotiable instrument."**

   A bill of lading is not a "negotiable instrument" or a piece of commercial paper, and the doctrines favoring an innocent holder for value of negotiable paper do not wholly apply thereto.

   [Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Negotiable Instrument.]

2. **Shipping ⟨⟩110—"Clean" bill of lading imports under-deck shipment.**

   A bill of lading, which was "clean"—that is, contains no reference to the fact that the shipment was loaded on deck and which was issued by the ship's agents on behalf of the master and owners—imports under-deck shipment.

   [Ed. Note.—For other definitions, see Words and Phrases, Second Series, Clean.]

3. **Shipping ⟨⟩132(2)—Pleadings held to require libelant to prove title by purchase of bill of lading.**

   Where the libel alleged ownership of a consignment of rosin by a purchase of the bill of lading from the shipper, and the answer denied that the rosin was shipped to libelant, and denied for lack of knowledge the transfer of the bill of lading, the libelant was required to introduce evidence to establish its title to the shipment, so that it was error to render a decree for libelant on the pleadings.

4. **Shipping ⟨⟩110—Issuance of clean bill by oversight does not render ship liable for carrying on deck as agreed.**

   Where the freight contract provided for deck shipment in the ship's option, the shipper cannot recover for loss of the consignment, which he knew was loaded on deck, merely because by oversight or inadvertence a clean bill of lading was issued.

5. **Admiralty ⟨⟩117—After erroneous decree on pleadings, evidence can be taken in appellate court.**

   Where the District Court erroneously rendered a decree for libelant on the libel and answer, the Circuit Court of Appeals is not obliged to send the case back for the taking of evidence, but can direct the evidence to be taken in that court, since the appeal is a new trial.

Appeal from the District Court of the United States for the Southern District of New York.

Libel by the S. A. Companhia Geral Commercial Do Rio De Janeiro against the schooner St. Johns N. F., of which the St. Johns N. F. Shipping Corporation was claimant. Decree for libelant, and claimant appeals. Reversed, with directions to take testimony.

The libel sets forth that on a day certain the General Commercial Company, Limited, shipped on the St. Johns, then at New York, 800 barrels of rosin, to be transported to Rio de Janeiro and there delivered "to the libelant, freight prepaid, according to the terms and conditions of a certain bill of lading," a copy of which was attached to the libel. The answer denies the facts alleged in the above-quoted portion of the libel. In a separate paragraph the libel continues: That before the departure of the vessel from New York with said rosin on board the General Commercial Company duly indorsed the said bill of lading and delivered the same to the libelant, or its agents or representatives, who at the time of the schooner's sailing "were

the holders of the said bill of lading, and were the owners of the said shipment of rosin, and entitled to the delivery thereof in accordance with the terms and conditions of the said bill of lading."

The answer denied—by denying any knowledge or information thereof sufficient to form a belief—all the allegations last above summarized. The answer also affirmatively alleged that prior to the shipment in question the schooner's agents entered into a written contract with General Commercial Company by which it agreed to carry the said rosin "on or under deck, ship's option." A copy of this contract was attached to the answer, which then alleges that the said rosin was "properly and securely loaded on the deck of the schooner, * * * being lashed down and boxed in and planked, * * * all of which was within the knowledge of the shippers"—i. e., General Commercial Company. It is then alleged that the schooner encountered very heavy weather, which rendered necessary the jettison of the rosin, which peril of the sea was the only reason for admitted nondelivery at Rio.

To this answer and all of it libelants filed peremptory exception, praying "that the answer of the claimant be struck out" and an interlocutory decree granted, because said answer "does not state facts sufficient on the face thereof to constitute a defense to the cause of action alleged in the libel." The District Court upheld the exception, entered an interlocutory decree, permitted an assessment of damages, and from the ensuing final decree claimant took this appeal.

Haight, Sandford, Smith & Griffin, of New York City (Henry M. Hewitt, of New York City, of counsel), for appellant.

Crowell & Rouse, of New York City (E. Curtis Rouse, of New York City, of counsel), for appellee.

Before WARD, HOUGH, and MANTON, Circuit Judges.

HOUGH, Circuit Judge (after stating the facts as above). [1] Libelant did not ship the rosin. Its title thereto and right to sue depended upon the indorsement or transfer to it of the bill of lading. The title as alleged is excellent and very usual; yet it is to be remembered that a bill of lading is not a negotiable instrument, or a piece of commercial paper, and the doctrines favoring an innocent holder for value do not wholly apply. Pollard v. Vinton, 105 U. S. 7, 26 L. Ed. 998.

[2] The bill of lading thus transferred is "clean"; that is, it contains no reference to the fact that the rosin was laden on deck, and it was issued by the ship's agents on behalf of the master and owners. Consequently it imports under-deck shipment. The Delaware, 14 Wall. 579, 20 L. Ed. 779. Yet in Lawrence v. Minturn, 17 How. 100, 15 L. Ed. 58, the facts being that goods were carried on deck in pursuance of the written contract of ship and shipper, while the bill of lading for the same was "clean," the consignee (named in the bill of lading), who sued for loss of deck cargo, was held to be bound by the agreement of the shipper, made before issuance of the bill of lading.

It is to be remembered that we have nothing before us but a point of pleading, viz. whether, viewing the allegations of the answer most favorably for the claimant, any defense is suggested. Libelant's position is that, assuming an antecedent freight contract, in this instance it was no more than that shipment on deck would be at "ship's option," and that the ship by issuing a clean bill exercised that option, and is accordingly conclusively estopped from going back of the bill itself.

[3] But this interesting question is not reached until the libelant es-

tablishes its title and right to sue; i. e., it must prove its ownership in the rosin, an ownership different and distinct from that of the General Commercial Company, and so establish not only that it is unaffected by any bargains or agreements made by the shipper antecedent to the bill of lading, but its very right to bring suit under that bill. We hold that on peremptory exception, over claimant's denial, it cannot be assumed or inferred that libelant is as near an "innocent holder for value" as the transferee of a bill of lading can ever become, and we hold further that such title must be affirmatively proved. Under these pleadings it is a part of libelant's case.

[4] As to whether the issuance of this bill constituted an exercise of option we express no opinion, further than the following: If the shipper had brought this suit, and had executed the freight contract providing for deck shipment at ship's option, and knew that the rosin was actually put on deck, the mere fact that by oversight or inadvertence a clean bill was issued would not be conclusive against the ship. On the other hand, the case would be exactly like Lawrence v. Minturn, supra. It was error to strike out the answer on peremptory exceptions; testimony is necessary.

[5] As this appeal is a new trial, we are not obliged to send the case back in order that evidence may be given. It is directed that no mandate issue until the further order of the court, and that the parties take testimony in this court, for which purpose 40 days from the date of filing this opinion are allowed to libelant, and 40 days to claimant, calculated from the date when libelant rests, or from the expiration of the first period of 40 days as the case may be.

When the testimony has been taken, it is directed that the case stand for argument at the opening of the term of October, 1921. Applications, if any, for extension of time for taking testimony, may be made on reasonable notice, to any judge of this court.